UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HEATHER C.,

           Plaintiff,

    v.                                    **DECISION AND ORDER**

                                                19-CV-584S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

    1.    Plaintiff Heather C.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for supplemental security income and disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed her applications with the Social Security Administration on September 19, 2015. Plaintiff alleged disability beginning December 14, 2013, due to degenerative disc disease of lumbar spine status post-lumbar discectomy; anxiety; depression; migraine headaches with cervicalgia. Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

    3.    On January 23, 2018, ALJ Paul Georger held an in person hearing at which Plaintiff—represented by counsel—and Vocational Expert Jay Steinbrenner appeared

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

and testified.  (R.[2] at 31-49.)  At the time of the hearing, Plaintiff was 35 years old (she was 31 years of age on her alleged onset date) with a bachelor's degree in business administration (R. at 24).  The ALJ found that Plaintiff was unable to perform any of her past relevant work (R. at 24) as an insurance claims representative and working in the family's pizza restaurant (Docket No. 17, Def. Memo. at 2; R. at 150, 152, 159, 161, 212).

   4. The ALJ considered the case *de novo* and, on April 17, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

   5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 15, 17.)  Plaintiff filed a response on June 10, 2020 (Docket No. 20), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

   6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's April 17, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

4

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 14, 2013, onset date. (R. at 17.) At step two, the ALJ found that Plaintiff has the following severe impairment: degenerative disc disease of lumbar spine status post-lumbar discectomy; anxiety; depression; migraine headaches with cervicalgia. Id. at 17-18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 18-19.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with exceptions, that she could frequently climb ladders, ropes, or scaffolds; she could frequently stoop and crouch; she can occasionally work at unprotected heights, with moving mechanical parts, and operate a motor vehicle; she is limited to simple, routine, repetitive tasks and simple work-related decisions; and can perform work with occasional interaction with supervisors, coworkers, and the general public. (R. at 19).

13. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 24.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. The vocational expert opined that a hypothetical claimant similar in age, education, and work experience as Plaintiff could perform such jobs as small products assembler (light); plastic injection mold machine operator (light); electronic sub-assembler (light) (R. at 25.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 26.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ relied upon a stale consultative report and thus upon his lay assessment of the medical evidence to deny disability. Consultant Dr. Abrar Siddiqui rendered his observations only two weeks after Plaintiff's surgery and the record does not contain a subsequent consultative evaluation of Plaintiff. (Docket No. 15, Pl. Memo.) For the reasons that follow, this argument is rejected.

15. Consultative examiner Dr. Abrar Siddiqui[4] examined Plaintiff on November 30, 2015, two weeks after her surgery (R. at 790, 22). Dr. Abrar Siddiqui found that Plaintiff complained of asthma, migraine headache, and back pain (R. at 790, 22). Plaintiff walked slowly and Dr. Siddiqui found that she had 4/5 muscle strength in her lower extremities (R. at 792, 22). Plaintiff appeared to be in no acute distress (R. at 791, 22), could ambulate without assistive device, and had full range of motion for her extremities, and 5/5 strength in her upper extremities (R. at 791,792, 22). Based on this evaluation, Dr. Siddiqui concluded that Plaintiff had "mild to moderate limitations in claimant's ability to sit, stand, climb, push, pull, or carry heavy objects. However, her recent low back surgery (two weeks ago) also contributed to the above-mentioned limitations" (R. at 793, 22).

16. The ALJ then noted that the record contained evidence of drug seeking behavior and possible exaggeration of pain that "further erodes the reliability of the claimant's subjective complaints of pain and other limitations" (R. at 22; see Docket No. 17, Def. Memo. at 18). Defendant reminds that this Court should show great deference to the fact findings of the ALJ (Docket No. 17, Def. Memo. at 18).

---

[4]Not to be confused with treating physician Dr. Jafar Siddiqui, R. at 649, 651, 871; Docket No. 20, Pl. Reply Memo. at 3 n.1; Docket No. 15, Pl. Memo. at 7, 14.

17. After her low back surgery, the ALJ observed that at follow up visits since May 2017 "aside from tenderness and sporadic deficits in sensation, examination of the claimant often revealed the claimant to be in no acute distress with full lower extremity strength, normal reflexes, full but painful range of motion, negative straight leg raise testing and a normal gait (with only mild antalgia observed sporadically)" (R. at 21-22, citing R. at 845, 859, 864, 898, 902-08). For example, on August 22, 2017, Dr. John Fahrbach examined Plaintiff and recommended modification of her routine and exercises (R. at 898), but without assessing limitations or any functional assessment.

18. Plaintiff argues that the ALJ was assuming the role of a doctor in evaluating the raw medical record, despite Second Circuit directions to the contrary (Docket No. 15, Pl. Memo. at 19-20, citing cases). She later contends that Dr. Siddiqui's November 2015 examination was "woefully" incomplete (id. at 21; Docket No. 20, Pl. Reply Memo. at 3).

19. Plaintiff points out subsequent examinations by Dr. Fahrbach on December 15 and 24, 2015, that showed worsening back pain (Docket No. 20, Pl. Reply Memo. at 4-5; R. at 808, 811), concluding that Dr. Siddiqui's November 2015 evaluation was stale when the ALJ rendered the decision on April 17, 2018 (Docket No. 20, Pl. Reply Memo. at 4).

20. Defendant responds that it was not record development issue; rather, Plaintiff failed to meet her burden of proving functional limitations that preclude any substantial gainful activity (Docket No. 17, Def. Memo. at 15).

21. Defendant then argues that Plaintiff shifted her disability claim from migraines to her low back but failed to show that this condition restricted her from work for at least twelve months (Docket No. 17, Def. Memo. at 16), Barnhart v. Walton, 535

U.S. 212, 219, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002) (construing 42 U.S.C. § 423(d)(2)(A)).  Plaintiff complained of low back pain from March 2015 (months after her onset date of December 2013 for migraine headache), having surgery in November 2015 (R. 21, 651, 816).  Defendant asserts the ALJ recognized this but found nothing in the record to show significant exacerbations of her symptoms before or after the surgery and that her symptoms were essentially normal post-surgery (Docket No. 17, Def. Memo. at 16-17).  The only medical opinion from this period is Dr. Siddiqui's, showing that she could perform light work (id. at 17).

22.     The above analysis ignores Plaintiff's post-surgery examinations where she complained of pain (left leg and right leg pain), residual disc protrusion shown on a subsequent MRI, and pain treatments by epidural injections in March and April of 2017 (Docket No. 20, Pl. Reply Memo. at 4-5; R. at 811, 804, 854-55, 856, 862).

23.     While arguing that Dr. Siddiqui's opinion was stale, Plaintiff presents evidence of treatment for at least twelve months, but she has not shown functional limitation arising from that condition (see Docket No. 17, Def. Memo. at 1).  As observed by both parties, the only medical opinion during the months surrounding her back surgery was Dr. Abrar Siddiqui's in November 2015.

24.     Despite Plaintiff's contentions, the ALJ has not engaged in a lay assessment of the medical evidence and relied solely on the stale (and potentially incomplete) evaluation of Dr. Abrar Siddiqui. While her condition may not have been normal post-surgery, Plaintiff fails to establish any limitation in her ability to perform any work.

25.  Plaintiff testified at the hearing that she could walk for 5-10 minutes, stand for 30 minutes, lift about 30 pounds (R. at 42-43; see Docket No. 17, Def. Memo. at 13; cf. R. at 20 (ALJ reporting that Plaintiff stated that she could stand for 15 minutes at a time, walk for 5 minutes at a time, and lift only to 5 pounds).  By her own testimony, Plaintiff falls within the definition of light work (including the ability to lift no more than 20 pounds, 20 C.F.R. § 404.1567(b)).

26.  Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is denied and Defendant's Motion (Docket No. 17) for Judgment on the Pleadings is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:    August 12, 2021
         Buffalo, New York


                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge